IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02410-KLM

MICHAEL MOORES,

 Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE COMPANY,

 Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

 This matter is before the Court on Defendant's **Motion for Determination of Law and Partial Summary Judgment** [#28][1] (the "Motion"). Plaintiff filed a Response [#31] in opposition to the Motion [#28], and Defendant filed a Reply [#34]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#28] is **DENIED in part and GRANTED in part**.[2]

### I. Summary of the Case[3]

---

[1] "[#28]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#14, #15].

[3] The following facts are undisputed unless otherwise stated. The factual record and reasonable inferences therefrom are viewed in the light most favorable to Plaintiff as the party opposing

1

On February 24, 2017, Plaintiff was involved in a motor vehicle accident with non-party Kirsten Vigil ("Vigil").  *Def.'s Ex. A, Aug. 8, 2017 Compl. Against Vigil in 2017CV31767* [#28-1] ¶ 4; *Def.'s Ex. B, Am. Answer to Compl. Against Vigil* [#28-2] ¶ 4.  Plaintiff contends Ms. Vigil was at fault.  *Am. Compl.* [#6] ¶ 14.  As a result of the accident, Plaintiff claims he suffered injuries.  *Id.* ¶ 13.

At the time of the accident, Ms. Vigil was insured by a liability policy issued by Progressive Insurance ("Progressive") providing liability benefits of $25,000 per person, $50,000 per accident.  *Def.'s Ex. D, Vigil's Initial Disclosures* [#28-4] at 6.  Plaintiff also had underinsured motorist ("UIM") coverage through Defendant State Farm.  *Am. Compl.* [#6] ¶ 18; *Answer* [#11] ¶ 7.  The relevant policy language for Plaintiff's UIM coverage is as follows:

> **Insuring Agreement**
>
> 1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle. The *bodily injury* must be:
>    a. sustained by an *insured*; and
>    b. caused by an accident that involves the operation, maintenance, or use of either an uninsured motor vehicle or an underinsured motor vehicle as a motor vehicle. . . .
> 2. *We* will not pay any damages:
>    a. that have already been paid to or for the *insured* by or for any *person* or organization who is or may be held legally liable for that *bodily injury*;
>    . . .
>
> **Limits**

---

summary judgment.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

> [1.]    . . . a. The most we will pay from this policy for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:
>    (1) the limit shown under "Each Person"; or
>    (2) the difference between the total limits of legal liability coverage from all sources and the *insured's* damages.

*Def.'s Ex. F*, *Pl.'s Policy* [#28-6] at 20-21 (emphasis in original).

On March 29, 2017, Plaintiff requested policy documents and any applicable rejection forms from Defendant. *Pl.'s Ex. 2, Letter from Franklin D. Azar & Associates, P.C.* [#31-2]. Defendant's records state that Defendant faxed Plaintiff's "selection/rejection" forms to him on April 4, 2017. *Def.'s Ex. J, Claim File* [#34-1] at 14 ("rec'd selection/rejection form, faxed to I/A").

Plaintiff filed suit against Ms. Vigil on August 8, 2017. *Def.'s Ex. A* [#28-1] at 1. Instead of proceeding to trial, Plaintiff settled his lawsuit against Ms. Vigil, and the case against her was dismissed. *Def.'s Ex. G, Settlement Agreement* [#28-7]; *Def.'s Ex. H, Stipulated Dismissal* [#28-8]. Progressive paid $75,000 to settle the lawsuit against its insured, Ms. Vigil. *Def.'s Ex. G* [#28-7]; *Def.'s Ex. I, Check from Progressive* [#28-9]. This payment was issued on May 17, 2018. *Def.'s Ex. I* [#28-9].

Meanwhile, Plaintiff made second and third requests for policy documents and any applicable rejection forms from Defendant on March 22, 2018, and on May 24, 2018. *Pl.'s Ex. 3, Letter from Franklin D. Azar & Associates, P.C.* [#31-3]. Defendant's records state that underinsured coverage was extended to Plaintiff on May 24, 2018. *Def.'s Ex. J* [#34-1] at 8-9. On June 13, 2018, Defendant sent a letter to Plaintiff's counsel acknowledging

that Defendant had agreed to extend underinsured coverage to Plaintiff.  *Pl.'s Ex. 1, Letter from Def.* [#31-1].

In the this lawsuit, Plaintiff seeks damages and asserts the following claims: (1) breach of contract, (2) first party statutory claim under Colo. Rev. Stat. § 10–3–1116, and (3) bad faith.  *Am. Compl.* [#6] ¶¶ 27-43.  In the present Motion [#28], Defendant invokes Fed. R. Civ. P. 50(a)(2) and Fed. R. Civ. P. 56 in order to obtain a determination of law in its favor on one issue, as follows: "that where the tortfeasor's liability insurer paid more than its limits, Plaintiff Michael Moores is only entitled to collect UIM benefits to the extent the damages he sustained exceed the amount actually paid by the tortfeasor's liability insurer."  *See Motion* [#28] at 1.

## II.  Fed. R. Civ. P. 50(a)(2)

Defendant's only direct reference to this rule is as follows: "Pursuant to Fed. R. Civ. P. 50(a)(2): 'A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.'"  *Motion* [#28] at 4.  While this may be true, Rule 50(a)(2) must be interpreted in the context of the entire rule.  *See Fogle v. Palomino*, No. 14-cv-00880-KLM, 2016 WL 9045844, at *3 (D. Colo. June 6, 2016).  Rule 50(a)(1) states: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim

or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

In *Bio Med Technologies Corporation v. Sorin CRM USA, Inc.*, No. 14-cv-0154-WJM-CBS, 2016 WL 1161848, at *2 (D. Colo. Mar. 24, 2016), the Court stated:

> As a procedural matter, Plaintiff's [Rule 50] Motion is utterly perplexing. The plain language of Rule 50(a) permits judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial," and notes that a motion under that rule "may be made at any time before the case is submitted to the jury." As such, this is patently not a Rule 50(a) motion, and Plaintiff made no Rule 50(a) motion at trial.

Here, no issue has been fully heard during a jury trial because there has been no jury trial yet. Thus, a Rule 50 motion at this stage of the litigation is procedurally improper and must be denied.

Accordingly, to the extent Defendant seeks relief pursuant to Fed. R. Civ. P. 50, the Motion [#28] is **denied**.

## II.  Fed. R. Civ. P. 56

### A.     Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277

Case 1:19-cv-02410-KLM   Document 39   Filed 04/14/21   USDC Colorado   Page 6 of 14

U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

**B.     Analysis**

7

The sole legal issue presented in the Motion [#28] is whether Defendant is only obligated to pay UIM benefits to Plaintiff if Plaintiff's damages exceed the $75,000 paid by Ms. Vigil's insurance carrier.  *Motion* [#28] at 2.  In support, Defendant primarily relies on the language of Colorado's UIM statute, Colo. Rev. Stat. § 10–4–609, and the application of that statute by the Colorado Court of Appeals in *Bailey v. State Farm Mutual Automobile Insurance Co.*, 429 P.3d 109, 110-111 (Colo. App. 2018).

In relevant part, Colo. Rev. Stat. § 10–4–609 provides:

(1)    (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . .

(c) The coverage described in paragraph (a) of this subsection (1) *shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained*, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section. . . .

(4)    Uninsured motorist coverage shall include coverage for damage for bodily injury or death *that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle*.  An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident.

(emphasis added).

The background facts of *Bailey* are similar to the facts here, where a vehicle accident led to the plaintiff-driver suing the other driver for negligence and his own insurance company for underinsured motorist benefits.  *Bailey*, 429 P.3d at 111.  The

precise issue before the Colorado Court of Appeals was "whether an underinsured motorist (UIM) policy is triggered under Colorado's UIM statute . . . if the negligent driver's insurance company agrees to pay the full extent of a jury's verdict." *Id.* at 110-11.  The other driver's insurance policy covered him for $100,000 in damages, and the plaintiff's insurance policy covered him for $100,000 in UIM damages.  *Id.* at 111.  Shortly before trial, a letter from the other driver's insurance company was disclosed stating: "Should the case actually be tried, provided you comply with the conditions indicated above, you are fully protected from any compensatory damage award which may be awarded at trial, regardless of amount."  *Id.*  The jury found in favor of the plaintiff and awarded him $300,000.  *Id.*  After trial, the plaintiff's own insurance company moved for entry of judgment on the plaintiff's UIM claim, asserting that the letter from the other driver's insurance company effectively provided unlimited liability insurance coverage for the other driver.  *Id.*  The plaintiff's insurance company argued that this meant that the other driver's insurance would cover the total amount of damages, and because there was no difference between the essentially unlimited coverage and the amount of damages, the plaintiff was not entitled to UIM benefits as well.  *Id.*

Here, regarding the $75,000 settlement agreement with Ms. Vigil's insurance company, Plaintiff argues that "it is not clear the payment of the $50,000 excess [over Ms. Vigil's $25,000 policy limit] is even to be earmarked to [Plaintiff's] physical injuries," because, "[i]n typical fashion the release agreement does not give a breakdown of what amount of the $75,000 settlement figure was intended to cover what category of damages."  *Response* [#31] at 5 (citing *Def.'s Ex. G* [#28-7]).  Thus, Plaintiff continues,

"[p]art or all of the excess may have been paid in order to avoid potential suit against [Ms. Vigil's insurance carrier] Progressive by their in[s]ured."  Plaintiff further argues that, "[i]f this is the case, then [Defendant] is certainly not entitled to get a benefit from this payment."  *Id.*  Plaintiff concludes that "[c]ompensatory and potentially exemplary damages awarded to Progressive's insured fall outside of [Colo. Rev. Stat. § 10–4–609(4)] and as a result State Farm should not benefit from any such payment."  *Id.*

The Court begins its analysis with a close reading of Colorado's UIM statute.  Colo. Rev. Stat. § 10–4–609(1)(c) provides that UIM coverage consists of the difference between (1) "the amount of the limits of any legal liability coverage" and (2) "the amount of the damages sustained, excluding exemplary damages."  The statute does *not* provide that UIM coverage must be provided for the difference between the amount of covered *damages* and the amount of damages sustained, as Plaintiff contends.  If the Colorado legislature had meant to say that, it easily could have done so.  *See Bailey*, 429 P.3d at 115 ("We see nothing in the statute that would lead to this result, and we decline to write words or phrases into a statute that do not appear on its face.") (citing *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010) ("[W]e will not interpret a statute to mean that which it does not express."))).  Instead, the statute explicitly identifies the base number as "legal liability coverage."  Stat. § 10–4–609(1)(c).

Although "legal liability coverage" certainly *does* include damages, the statute does *not* say that "legal liability coverage" *only* includes damages.  *See* Colo. Rev. Stat. § 10–4–609(4) ("Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an

10

underinsured motor vehicle."). Again, had the legislature intended to *only* include such damages, then it easily could have used the word "only" or similar language. *See Bailey*, 429 P.3d at 115 (citing *Carruthers*, 251 P.3d at 1204). Thus, the Court finds that, while "legal liability coverage" *must* include "damage for bodily injury or death" pursuant to Colo. Rev. Stat. § 10–4–609(4), it need not necessarily *only* include such. Plaintiff has provided no legal authority to the contrary, and the Court has found none.

This conclusion comports with *Bailey*, where the Colorado Court of Appeals stated that (1) "[t]he statute provides that UIM benefits are intended to cover 'the difference' between the negligent driver's liability limits and the damages," (2) "UIM benefits are not triggered until the damages exceed the negligent driver's liability coverage limits," and, most directly, (3) "the most a plaintiff could recover, taking together the other driver's coverage and the plaintiff's own UIM benefits, is the total amount of damages." *Bailey*, 429 P.3d at 114. Thus, the Court rejects Plaintiff's argument that legal liability coverage may not include considerations other than damages, such as, as is relevant here, a plaintiff's agreement not to pursue further litigation as a result of a settlement.

This leads the Court to the next question, i.e., what was the legal liability coverage in this case. Relying on *Bailey*, Defendant argues that the $75,000 settlement that the other driver's insurance company actually paid to Plaintiff was the legal liability coverage, while Plaintiff appears to argue that Ms. Vigil's $25,000 policy limit at the time of the accident and throughout most of the litigation process was the legal liability coverage. *Motion* [#28] at 2; *Response* [#31] at 6. Plaintiff attempts to distinguish *Bailey* on two grounds: (1) Defendant here did not issue Plaintiff a "comfort letter" agreeing to cover the

eventual verdict at trial no matter the amount, and (2) *Bailey* was tried to verdict, and thus damages were determined and categorized. *Response* [#31] at 3. The Court finds these differences to be immaterial.

First, the *Bailey* court did *not* hold that the only way for an insurance company to extend its liability coverage (other than through a new policy) was by issuing a comfort letter. *Bailey*, 429 P.3d at 114-15. The court there held that "nothing in the plain language of section 10–4–609 prevents an insurer from effectively raising an insured's 'legal liability coverage' by promising to 'fully protect[ ] [an insured] from any compensatory damage award which may be awarded at trial, regardless of amount,' as the other driver's insurer did here." *Id.* at 114. Similarly, in the present case, "nothing in the plain language of section 10–4–609 prevents an insurer from effectively raising an insured's 'legal liability coverage' by promising" to pay a settlement amount in excess of the policy limits. *See id.* In other words, once Ms. Vigil's insurance carrier legally agreed to pay $50,000 in excess of her $25,000 policy, the carrier was legally liable to provide such coverage, and the carrier complied with this legal responsibility by paying Plaintiff $75,000. *Def.'s Ex. I* [#28-9].

Plaintiff's second attempt to distinguish *Bailey*, i.e., that *Bailey* was tried to verdict, and thus damages were determined and categorized, is true but immaterial. As the Court explained above, "legal liability coverage" may include more than just damages, but the Colorado legislature determined that UIM benefits should only be obtained if the damages sustained exceed that coverage, regardless of what the coverage includes. In other words, it does not matter what is or is not included in the settlement agreement, as

12

...

discussed above. The only thing that matters is whether Plaintiff's damages exceed the $75,000 paid by Ms. Vigil's carrier. *See Bailey*, 429 P.3d at 114 (stating that "the most a plaintiff could recover, taking together the other driver's coverage and the plaintiff's own UIM benefits, is the total amount of damages"). Indeed, the *Bailey* court stated that the UIM "statute's plain language suggests that the legislature did not intend to allow a plaintiff to recover UIM benefits in excess of the total amount of *actual damages*." *Bailey*, 429 P.3d at 114 (emphasis added). Thus, in order for Plaintiff to succeed at trial on this claim, Plaintiff must show that his *actual damages* exceed the $75,000 legal liability coverage provided by Ms. Vigil's insurance carrier. *See id.* (holding that the plaintiff was only entitled to UIM benefits if the amount of his damages exceeded the legal liability coverage).

Accordingly, to the extent Defendant seeks relief pursuant to Fed. R. Civ. P. 56, the Motion [#28] is **granted**. The Court finds as a matter of law that Plaintiff is entitled to collect UIM benefits from Defendant only to the extent the actual damages he sustained exceed $75,000.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#28] is **DENIED in part and GRANTED in part**. The Motion is **denied** to the extent asserted pursuant to Fed. R. Civ. P. 50(a)(2). The Motion is **granted** to the extent asserted pursuant to Fed. R. Civ. P. 56.

Dated: April 14, 2021

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge